UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD R. REESE, JR.,

    Plaintiff,

v.

ROBERT BOSCH CORP.,

    Defendant.

_____/

Case No. 1:05-CV-555

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant Robert Bosch Corporation's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The Motion has been fully briefed and the Court discerns no reason to hear oral argument. W.D. MICH. LCIVR 7.2(d). For the reasons set forth below, the Court will grant Defendant's Motion.

**I.    BACKGROUND**

This action arises under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-54, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). MICH. COMP. LAWS §§ 37.1101-.1607. Defendant is a Michigan corporation that manufactures automobile brake parts from its facility in St. Joseph, Michigan. Defendant employed Plaintiff Robert R. Reese, Jr. from October 18, 1999, until August 26, 2002, as a part of a night maintenance crew.

Plaintiff is infected with Hepatitis C and requested FMLA leave on June 15, 2002. In support of his FMLA application, Plaintiff provided Dr. Bruce Jones' certification that Plaintiff would need a few days off from time to time due to the side effects of the medication used to treat his infection. Defendant granted Plaintiff's request and allowed him to take intermittent FMLA leave as needed.

On July 15, 2002, Plaintiff's fellow crew members reported to Defendant they were afraid to work with Plaintiff because they feared contracting Hepatitis C. The crew also threatened to walk off the job site. In response to its employees concerns, Defendant sent Plaintiff home for the remainder of his shift with pay. Plaintiff returned the next day and, along with his crew, attended a blood borne pathogen training session Defendant provided for its employees.[1]

On August 15, 2002, Plaintiff informed his supervisor that he needed to resume intermittent FMLA leave because he had some medical tests scheduled for the following day and he would update Defendant with his status soon. Defendant's plant guard was present for a portion of this conversation. Defendant hotly disputes this point and claims that Plaintiff merely told his supervisor he was going to take the night off because he was not feeling well, but assured Defendant he would return the next day. Plaintiff did not report to work or update his status until August 22, 2002.

On August 22, Plaintiff contacted Defendant and expressed his desire to resume intermittent FMLA leave to recover from the side effects of his Hepatitis C medication. Plaintiff expected to return to work by August 26, 2002. During this conversation, however, Plaintiff divulged that he was suffering from a mental condition. When pressed, Plaintiff refused to provide any specific information of his condition, and Defendant became suspicious Plaintiff was using his FMLA leave for an unapproved purpose. Defendant requested Plaintiff contact its medical records administrator and either explain his new mental condition or document how his absences were covered under his previously approved intermittent FMLA leave.

---

[1] Defendant's employees' fears of working with Plaintiff were chiefly the product of ignorance. Hepatitis C is primarily transmitted by blood-to-blood contact and cannot be contracted by sneezing, coughing, shared utensils, or casual contact.

Defendant also began to investigate Plaintiff's request for FMLA leave and probed deeper into his August 15, 2002 leave request. Defendant double checked with its supervisor and plant guard to assure that while Plaintiff did request leave on August 15, 2002, he promised to return the next day. Defendant learned that Plaintiff had not provided its plant guard notice (as required by the collective bargaining agreement covering Plaintiff) of his FMLA request as he claimed he had. Finally, Plaintiff never followed up with Defendant's medical records administrator to discuss his new mental condition or explain how his absences were covered under his previously approved intermittent FMLA leave.

Furthermore, Defendant discovered that several issues Plaintiff raised with it on August 22, 2002, turned out to be false. Plaintiff claimed that after his Hepatitis C status became known, he suffered immediate workplace adversity. To wit, Plaintiff averred he was: (1) put on third shift; (2) assigned to preventative maintenance; (3) not given adequate training to perform his duties; and (4) reprimanded in front of his union steward. Adducing the veracity of Plaintiff's claims, Defendant's employment records revealed that he was placed on third shift preventative maintenance on July 9, 2002, three days prior to the disclosure of his Hepatitis C status. Moreover, Plaintiff had previously performed preventative maintenance and general maintenance, obviating the need to further train him. Also, Plaintiff had attained journeyman status in his labor organization, which, according to him, makes extra training unnecessary. Lastly, Plaintiff's union steward could not recall any incidents of reprimand involving Plaintiff.

Based on the aforementioned inconsistencies and strong inference of untruthfulness, Defendant terminated Plaintiff's employ on August 26, 2002, because he neither reported for scheduled duty nor contacted Defendant to excuse his absence for four consecutive days.

Specifically, Defendant disbelieved Plaintiff's version of his August 15, 2002 request for FMLA leave and expected him back to work on August 16. Defendant's suspicions concerning Plaintiff's August 15, 2002 request for leave proved founded. Plaintiff later admitted in deposition testimony that he never took medication for Hepatitis C and the sole reason he was absent from work was related to depression.[2]

Plaintiff grieved his termination and submitted a letter from his psychologist, Dr. Sue Brennan, who certified that Plaintiff was unable to work on August 16-23, 2002, because of depression. Defendant conducted yet another investigation and learned that Dr. Brennan first evaluated Plaintiff on August 27, 2002, after he had been terminated.[3] Defendant denied Plaintiff's grievance and affirmed his termination. Plaintiff then initiated this action in Berrien County Circuit Court on July 18, 2005, which Defendant removed to this Court.

## II.  LEGAL STANDARDS

Under the language of Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported

---

[2] Defendant asked Plaintiff: "So you never took any medication for hepatitis while working at [Robert] Bosch?" Plaintiff responded "I never received an injection." (Pl.'s Dep. at 185).

[3] As Defendant correctly points out, Dr. Brennan's diagnosis and certification of depression were based on the erroneous assumption that Plaintiff was taking his Hepatitis C medication.

by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004); *Graham-Humphreys v. Memphis Brooks Museum of Art Inc.*, 209 F.3d 552, 557 n.7 (6th Cir. 2000); *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The factual record presented must be interpreted in a light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); however, Rule 56 limits the materials the Court may consider in deciding a motion under the rule to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting FED. R. CIV. P. 56(c)). It is with these principles in mind that the Court turns to Defendant's Motion.

**III.   DISCUSSION**

Under the FMLA, eligible employees are entitled to take up to 12 weeks of unpaid leave during any 12-month period for a qualifying medical or family event. 29 U.S.C. § 2612(a)(1). The Act also guarantees that their position, or its equivalent, will be available upon their return to work, *Id.* § 2614(a)(1), and contemplates two distinct theories of employer liability. That is, an employer is liable under the Act if it: (1) interferes with an employee's exercise of FMLA rights; or (2) retaliates against him for exercising his FMLA rights. In his Complaint, Plaintiff appears to allege

both theories of FMLA liability under Count I. In Count II, Plaintiff also claims that Defendant discriminated against him in violation of the PWDCRA and failed to accommodate his illness. Defendant's Motion seeks summary judgment on both counts of Plaintiff's Complaint.

      A.      **Plaintiff's FMLA Claims are Untimely**

The normal limitations period for an action under the FMLA is two years. 29 U.S.C. § 2617(c)(1). If the employer engages in a willful violation of the Act, however, the limitations period is extended to three years. 29 U.S.C. § 2617(c)(2). Because Plaintiff filed his Complaint more than two years after he was terminated, his FMLA claims are time-barred unless he can show that Defendant willfully violated the Act.

The FMLA does not define what a willful violation of its terms looks like. The Supreme Court has interpreted the concept of willfulness under other employment statutes to mean that "the employer either knew or showed reckless disregard for the matter of whether its conduct was [statutorily] prohibited . . . ." *Trans World Airlines Inc. v. Thurston*, 469 U.S. 111, 128-29 (1985) (Age Discrimination in Employment Act) (internal quotations omitted); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (Fair Labor Standards Act). The Sixth Circuit Court of Appeals has readily endorsed this standard when considering whether a FMLA claim is timely, *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 417-18 (6th Cir. 2005); *Williams v. Schuller Int'l Inc.*, 29 Fed. Appx. 306, 308 (6th Cir. 2002); *Williams v. Nw. Airlines Inc.*, 53 Fed. Appx. 350, 352 (6th Cir. 2002), as have other circuit courts of appeals. *Samuels v. Kan. City Mo. Sch. Dist.*, 437 F.3d 797, 803 (8th Cir. 2006); *Henson v. Bell Helicopter Textron Inc.*, 128 Fed. Appx. 387, 393 (5th Cir. 2005); *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531-32 (2nd Cir. 2004); *Hillstrom v. Best W. TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003).

Plaintiff has pled in his Complaint, albeit somewhat generically, that Defendant willfully violated the FMLA. Were this matter before the Court on a motion to dismiss, such pleading may arguably suffice. *See, e.g., Edwards v. Ford Motor Co.*, 179 F. Supp. 2d 714, 719 (W.D. Ky. 2001); *Caucci v. Prison Health Servs. Inc.*, 153 F. Supp. 2d 605, 609 (E.D. Pa. 2001). This case, however, has progressed to summary judgment and Plaintiff is required to provide some evidence that Defendant willfully violated the Act. FED. R. CIV. P. 56(e). In this regard, Plaintiff's efforts to articulate a willful FMLA violation fall well short of their required mark.

In other words, the Court does not believe that Defendant knowingly or recklessly disregarded Plaintiff's rights under the FMLA. The Court considers Defendant's decision to disbelieve Plaintiff's version of events surrounding his August 15, 2002 request for FMLA leave reasonable under the facts of this case. Defendant originally approved Plaintiff's application for intermittent FMLA leave on June 15, 2002, so that he could recover from the side effects of Hepatitis C medication. Subsequently—and with suspicions that later turned out founded—Defendant suspected Plaintiff was misusing his leave for reasons unrelated to his FMLA leave. As opposed to hastily terminating Plaintiff, Defendant began a careful investigation of the circumstances surrounding Plaintiff's August 15, 2002 request. As became apparent, Plaintiff's version of the events housed many inconsistencies and Defendant ultimately decided to disbelieve his account.[4] Accordingly, Defendant relied on its supervisor's version (*i.e.*, that Plaintiff promised to return the next day after requesting leave) and determined that because Plaintiff had been absent for four consecutive days without explaining his absence, it terminated his employ.

---

[4] Plaintiff was also given the chance to account for his absences and reconcile his FMLA leave status with Defendant's medical records administrator before termination. Plaintiff declined that opportunity.

Given Defendant's diligent investigation and Plaintiff's less than credible account, Defendant did not knowingly or recklessly disregard Plaintiff's rights under the FMLA. *See Hoffman*, 394 F.3d at 419; *Boyd v. City of E. St. Louis*, No. Civ. 04-096, 2005 WL 2085160, at *3 (S.D. Ill. Aug. 25, 2005) (even incorrect assumption about FMLA leave entitlement does not equate to reckless disregard for the Act). Defendant went to great lengths to consult with Plaintiff and others in an attempt to properly ascertain his FMLA status. *See Hoffman*, 394 F.3d at 419 (consultation with attorney and effected employee suggests a good-faith attempt to comply with the FMLA). In response to Dr. Brennan's certification of Plaintiff's depression, Defendant conducted a second investigation, which further militates against a finding of bad faith. *Id.*; *Passauer v. Quest Diagnostics Inc.*, No. CCB-03-159, 2004 WL 865829, *2 (D. Md. Apr. 22, 2004). Defendant did not deliberately choose to remain ignorant of the facts surrounding Plaintiff's August 15, 2002 FMLA leave request; it affirmatively sought to uncover whether he had in fact requested leave. *Id.* Thus, the Court believes Defendant is entitled to summary judgment on this score.

In so holding, the Court endeavors to make clear that it expresses no opinion on whether or not Defendant has violated the FMLA; the merits of Plaintiff's FMLA claims were not addressed. The Court merely holds that it cannot say that Defendant knew (given the strong inference against Plaintiff's veracity) its decision to disbelieve Plaintiff and consider him absent without cause was made with an intent to violate, or at least a reckless disregard for, Plaintiff's rights under the FMLA. Accordingly, the Court finds a willful violation wanting and Plaintiff's FMLA claims untimely. 29 U.S.C. § 2617.

**B.     Plaintiff's PWDCRA Claims are Meritless**

**1.     PWDCRA Discrimination**

Disability discrimination prohibited by the PWDCRA can be shown two ways. A claimant can show disability discrimination on direct evidence, *Matras v. Amoco Oil Co.*, 385 N.W.2d 586, 589 (Mich. 1986); otherwise, the sufficiency of his claims are tested against the familiar burden-shifting framework first articulated by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-07 (1973). *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001). Because Plaintiff has not put forth any direct evidence of disability discrimination, his claim is subject to the *McDonnell Douglas* burden-shifting analysis.

Under *McDonnell Douglas*, Plaintiff must satisfy his initial burden of establishing a *prima facie* case of disability discrimination. *McDonnell Douglas*, 411 U.S. at 802. To do so, Plaintiff must show: "(1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the [PWDCRA]." *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004) (citing *Chmielewski v. Xermac Inc.*, 580 N.W.2d 817, 821 (Mich. 1998)). The PWDCRA provides that an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MICH. COMP. LAWS § 37.1202(1)(b).

If Plaintiff demonstrates a *prima facie* case of disability discrimination, the burden then shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If Defendant advances such a reason, the burden then shifts

back to Plaintiff, who must demonstrate that the reason given by Defendant was pretext and its decision was actually motivated by an unlawful bias against the disabled. *Id.* at 807.

Plaintiff's theory of PWDCRA discrimination is that because Defendant responded to Plaintiff's coworkers' fears and sent him home with pay on June 15, 2002, it has discriminated against him. Defendant contends that Plaintiff cannot make a *prima facie* showing of discrimination because he cannot show he has been discriminated against in one of the ways set forth in section 37.1202(1)(b). That is, Defendant believes Plaintiff cannot show that he suffered any materially adverse change in employment due to the June 15 incident. *Peden*, 580 N.W.2d at 864. Upon careful review, the Court agrees.[5]

It is undisputed that in response to Plaintiff's coworkers' fears of contracting Hepatitis C, Defendant sent Plaintiff home for only one shift and he received full pay despite his absence. The next day the crew underwent blood borne pathogen training. The Court does not believe Plaintiff suffered any adversity because:

> [A]dverse employment actions, typically . . . take[] the form of an ultimate employment decision, such as "a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."

*Peña v. Ingham County Road Comm'n*, 660 N.W.2d 351, 358 (Mich. App. 2003) (citations omitted); *see also Wilcoxon v. Minn. Mining & Mfg. Co.*, 597 N.W.2d 250, 258 (Mich. App. 1999). The Court

---

[5] It should be noted that Plaintiff's Response to Defendant's Motion for Summary Judgment gave only superficial treatment to his PWDCRA claims. Other than conclusory rebuttals and oblique legal citation, Plaintiff has essentially failed to address his PWDCRA claims.

finds that sending Plaintiff home for one shift with pay is not a materially adverse employment action giving rise to liability under the PWDCRA.[6]

Precedents construing the federal employment statutes are in accord. *See Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (paid suspension pending investigation is not an adverse employment action); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (ten day suspension with pay does not constitute an adverse employment action); *Rose v. Buckeye Telesystem Inc.*, 181 F. Supp. 2d 772, 777 (N.D. Ohio 2001) ("Plaintiff's one-day suspension with pay does not constitute an adverse employment action."). Thus, the Court will grant Defendant's Motion for Summary Judgment on this ground.

### 2. PWDCRA Accommodation

The PWDCRA also provides that an employer "shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." MICH. COMP. LAWS § 37.1102(2). This claim is also subject to summary judgment.

Defendant observes that Plaintiff never made an in-writing request that it accommodate his disability as required by Michigan Compiled Laws § 37.1210(18). *Sanchez v. Lagoudakis*, 581 N.W.2d 257, 266 n.25 (Mich. 1998). Defendant placed a posting near Plaintiff's time clock to notify him of the requirements of section 37.210(18). *See* MICH. COMP. LAWS § 37.1210(19). Thus, Defendant was under no duty to accommodate Plaintiff when he has not properly requested an

---

[6] Plaintiff's additional means of discrimination raised in his Response (segregation and ostracism) are also not adverse employment actions. *Peña*, 660 N.W.2d at 360 (citations omitted) ("ostracism or isolation is not the sort of conduct that rises to the level of an adverse employment action.").

accommodation.  *Petzold v. Borman's Inc.*, 617 N.W.2d 394, 399 (Mich. App. 2000).  Notably, Plaintiff has not responded to this argument nor refuted Defendant's contentions.[7]  The Court finds that Defendant has met its initial burden under Rule 56, and consequently, summary judgment is appropriate.[8]

### IV.  CONCLUSION

Therefore, the Court will grant Defendant Robert Bosch Corporation's Motion for Summary Judgment.  A Judgment consistent with Opinion shall enter.

|  |  |
|---|---|
| DATED in Kalamazoo, MI: | /s/ Richard Alan Enslen |
| August 4, 2006 | RICHARD ALAN ENSLEN |
|  | SENIOR UNITED STATES DISTRICT JUDGE |

---

[7] Plaintiff has made no effort at all to respond to Defendant's summary judgment motion on his PWDCRA accommodation claim.  *See supra* note 5.

[8] The Court also notes that even if it could be said that Plaintiff properly requested an accommodation, Defendant did accommodate his disability and allowed him to take intermittent leave.